# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CATHY D. GOMEZ,

      Plaintiff,

vs.                                     Civil No. 00-1110 JP/WWD

LARRY G. MASSANARI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 6, 2001 **(Doc. 13)**.[1] Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for supplemental security benefits ("SSI"). Plaintiff is currently age 47 and alleges a disability which commenced May 23, 1996 due to a back injury. She has past relevant work at a medium exertional level as a cashier/stocker, flagger, ambulance driver, teacher's aide and carpenter's aide.

    2. Ms. Gomez' application was denied initially and on reconsideration. The ALJ found that Plaintiff has severe impairments of degenerative disc disease in the lumbar spine and pain and loss of function in the left foot, secondary to a history of multiple surgeries. However, the ALJ concluded that Plaintiff could still perform a wide range of sedentary work, although not her past relevant work, and that therefore Ms. Gomez was not disabled. The Appeals Council denied Ms.

---

    [1] The motion package was actually filed with the Court on July 23, 2001, although the motion was served on April 6, 2001.

Gomez' request for review of the Administrative Law Judge's ("ALJ") decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 416.920.[2] The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). The first four steps of the sequential evaluation process are not at issue in this case.

5. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant

---

[2] At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

work.  Thompson at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.

6.  Ms. Gomez contends that the ALJ erred in making findings at step five related to Plaintiff's credibility and the effect of her pain on her ability to work.

7.  The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. § 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8.  Plaintiff last worked at K-Mart seven years before the administrative hearing, and quit because of leg pain from standing much of the time.  She told the ALJ that she has throbbing lower back pain all day and that she walks very little because of foot pain and swelling.  Tr. at 39.  Ms. Gomez said the pain runs down her legs.[3]

9.  Ms. Gomez stated that she needed to shift positions every 15 minutes to reduce pain, and that sitting does not negatively affect her foot pain.  Tr. at 43.  She thinks she could lift a five gallon container.  Tr. at 45.

10.  Plaintiff cooks simple dinners.  Her daughter-in-law or friend frequently helps with the cooking, cleaning and laundry.  Her son helps with the yard work.  Tr. at 44.  Her condition has affected her ability to attended church regularly, as she cannot remain sitting for long.

---

[3] Plaintiff does not challenge the ALJ's finding of residual functional capacity ("RFC"), but rather the ALJ's reliance on the grids when Plaintiff alleges nonexertional impairments.

11. Plaintiff claimed that the pain makes her get up several times during the night and that sometimes she sleeps on the recliner. Tr. at 48. She has had five foot surgeries to remove neuromas, but her foot pain has not improved. Tr. at 49. Plaintiff has been told she has temporal mandibular joint ("TMJ") syndrome, causing her daily headaches. This impairment stems from an accident while working at a construction site and from a motor vehicle accident.

*Credibility*

12. Ms. Gomez contends that the ALJ erred in making findings at step five related to Plaintiff's credibility and the effect of her pain on her ability to work. Plaintiff also contends that the ALJ incorrectly limited his credibility analysis to back pain, omitting headaches and jaw pain, and foot pain.

13. The ALJ found that Plaintiff's allegations of disabling pain were not credible because they were not supported by evidence in the record. Tr. at 26. He considered various factors in the credibility analysis, including the levels of medication [taken] and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

14. The ALJ noted that Plaintiff's complaints were inconsistent with the record. Plaintiff had foot surgery in 1993 and 1994 and was treated conservatively after the surgeries did not provide relief. Her last visit to the podiatrist was in January 1997, when she saw Dr. Williams and was still complaining of left foot pain. Tr. at 191-92. The ALJ noted that there were no records

4

indicating further doctor visits or treatments after that date.

15. A residual functional capacity ("RFC") completed in March 1998 shows that Ms. Gomez' ability to sit is not affected by any of her impairments, although her ability to stand is limited to a total of 2 hours a day, and 10 to 20 minutes at a time. Tr. at 218-19.

16. The ALJ completely reviewed Plaintiff's medical visits and treatment for her back impairment, including 1997 visits to the Health Centers of Northern New Mexico, to Dr. Feldman (a treating physician) in 1997 and 1998, and to Dr. Doddy, a consultative physician for DDS. The findings in these medical reports support the ALJ's determination that Plaintiff's subjective complaints of disabling pain are not supported by the record. See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (determination that plaintiff was not credible because his testimony conflicted with the medical records is a recognized basis for discounting that testimony).

17. Plaintiff points to x-ray findings and findings of muscle spasm to support her complaints of pain. However, Dr. Feldman's examination of Plaintiff in March 1997 revealed paraspinal tenderness and *mild* spasm, and slight scoliosis. Tr. at 188-89. An x-ray report indicated mild degenerative changes, moderate facet hypertrophy, central disc bulging at L5-S1 and some marginal spinal stenosis in L3-4, which Dr. Feldman found not to be "particularly worrisome." Tr. at 200. He prescribed physical therapy and non-steroidal analgesics. Dr. Doddy, a consultative physician, found no muscle spasm on exam. Tr. at 213-15.

18. At her visit to the Health Centers of Northern New Mexico, Ms. Gomez reported low back pain for a couple of years, as well as numbness and tingling which had worsened over the past few months. Tr. at 194. The report states that Ms. Gomez walked with a limp due to the foot surgeries, that there was tenderness to palpation of the lumbosacral spine and a positive

straight leg raise.

19. Reports from Plaintiff's later visits to the Health Centers also support the ALJ's determination that Ms. Gomez' complaints of disabling pain were inconsistent with the record. In February 1998, Plaintiff visited the Center for a reevaluation of her welfare assignment. Examination revealed a positive straight leg raise with no radiating pain and tenderness in the lower half of the paralumbar muscles. Tr. at 261. The examining physician noted that Plaintiff had been using Tylenol, and prescribed a generic Robaxin.

20. On two other visits to the center that year (July and December 1998) for back pain, the medical reports indicate "benign clinical findings," with "mild reproducible thoracic muscle pain, but no reproducible lower back pain." Tr. at 254. Plaintiff was diagnosed with lower back pain which was musculoskeletal in origin, Tr. at 254, 259, and advised to continue regular Tylenol or ibuprofen with meals for back discomfort. Tr. at 254, 258-59.

21. Plaintiff saw a Dr. Urig reporting a long history of jaw pain and headaches. In 1996, Dr. Urig recommended physical therapy or surgery. Tr. at 185-88. In September 1998, Ms. Gomez visited the Health Centers complaining of bilateral jaw pain that had lasted for a week. She was prescribed a short course of Tylenol with codeine, and advised to eat soft foods for the next two weeks. Tr. at 256. As the ALJ noted, there is no mention of this problem on her next visit to the Health Centers in December 1998. Tr. at 253.

22. The fact that Ms. Gomez cannot work without some pain or discomfort is not sufficient cause to entitle her to benefits; a finding of disability "requires more than mere inability to work without pain." Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986). The ALJ noted

Plaintiff's use of over-the-counter medications,[4] the objective clinical signs and findings which were inconsistent with her reports of disabling pain, conservative treatment, as well as recognition by two examining physicians (Dr. Feldman and Dr. Doddy) of symptom exaggeration. Tr. at 214 ("excessive guarding"), 215 (symptom magnification) and 198 (excessive pain behavior).

23. The ALJ is "entitled to take into account incentives to appear disabled." Diaz v. Sec'y of Health & Hum. Serv., 898 F.2d. 774, 777 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (noting that consulting physician suspected plaintiff of exaggerating degree of numbness).

24. Based on the foregoing findings, I find that the ALJ's credibility determination was based on the correct legal standard and on substantial evidence from the record. I do not find that the ALJ incorrectly limited his credibility analysis to Plaintiff's back impairments, but took into account Plaintiff's other alleged impairments.

*Use of Grids*

25. The mere presence of non-exertional impairments do not automatically preclude reliance on the grids; rather it must interfere with the ability to work. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989). In his decision, the ALJ correctly recognized that the grids are applicable in situations where a claimant's complaints of non-exertional impairments and symptoms are not credible. Tr. at 26; see Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988) (cited case omitted).

26. Therefore, based on the ALJ's noncredibility determination, reliance on the grids was

---

[4] Ms. Gomez told the ALJ she was taking Tylenol and "painkillers." Tr. at 42. She indicated to Dr. Feldman and the examining provider at the Health Centers that she was not taking any regular medication. Tr. at 195, 198.

7

appropriate.

27. In sum, I find that the ALJ (1) did not err in making findings at step five related to Plaintiff's credibility and the effect of her pain on her ability to work; (2) did not impermissibly rely on the grids in analyzing Plaintiff's case; and (3) did not incorrectly limit his credibility analysis to back pain, omitting headaches and jaw pain, and foot pain.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **(Doc. 13)** be DENIED and this cause of action be DISMISSED WITH PREJUDICE. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE